Robertson, J., (dissenting.)
The principle adopted by the learned Judge at Special Term, in deciding this case, was one of which I had occasion to approve in the case of Corwin v. Daily, recently decided in this Court, (7 Bosw., 222,) and is fully sustained by all the cases. It is that a manufacturer of, or dealer in, any article, has a right to designate them as being made or sold by him, by a mark, or device, formed of a combination of letters, (such as Cocoaine,) not constituting a word in any language, and that no other person has a right to use the same mark, or device, by an immaterial change, such as omitting a single letter, (as in Cocome,) so as to induce the unwary public to believe that the articles made or sold by the counterfeiters are the same as those of the original inventor of the mark.
If, however, it should appear, as is contended in this case on the part of the defendants, that the device used by them to indicate their. manufactures, is a word either actually in use to express the nature,- component parts, quality, or use of the article, or capable of being formed, according to the analogy of language, from other words, as *207 a different part of speech, (such as Coco'ine,) and the plaintiffs have only adopted the same word, inserting a letter therein, in inventing his mark, so as to deprive it of its character as a word, the question would arise whether the defendant could be deprived of the right to use the combination of letters forming such word because it might resemble the device so adopted. The only remaining questions, therefore, in this case, are questions of fact, whether the term Cocome, with the diaeresis over the “i,” was a word in the French language, indicating the nature, ingredients, quality, or use of the liquid compound made by the defendants, and, if not, whether the defendants used’such word, or combination of letters, to mislead the public and make them believe that the commodities sold by them were the same as those sold by the plaintiffs.
It is somewhat remarkable, in this case, that the result of the report of the Keferee, is that the plaintiffs have sustained no damage, and the defendants made no profits, hitherto, by their' invasion of the plaintiffs* mark, and, to that extent, the basis of any equitable jurisdiction is taken away. I had occasion, in the case already adverted to, to trace the origin of the doctrine of trade-marks to the common liability of every one who palmed off upon the public his commodities as those of another man, to the deceived customer, and, indirectly, the supplanted competitor,. Equity seized on jurisdiction to prevent repetitions of the wrong, and, with its customary eagerness to amplify such jurisdiction and model the relief granted by it to every phase of such wrong, created the doctrine of what are called trade-marks. In doing so it has nearly established a common law copyright, of perpetual duration, permitting an injunction without a trial at law, calling upon the defendant for an account of his profits, and even attempting to reach what are claimed to be instruments prepared for future, fraud. This may be a very healthful jurisdiction, but, without great pare, its searching character may be made an instrument of wrong. Much is said of the injustice of allowing one man to. avail himself of the skill and *208 expenditure of another by false representations, which is well founded; but where, instead of using the name of the owner, or vendor, strange devices and insignia are employed to indicate such ownership, or source, which do so but ambiguously, and require considerable familiarity and experience with them to connect them therewith, no great sympathy is created for those using such devices. Were they the subjects of copyright, or other modes of warning mankind against trespassing on a settled right, there would be greater justice in punishing the trespasser; but the most innocent may be caught unwarily in a litigation where a word is employed as a device, originating, in some measure, from the materials used in forming a composition, as in this case, where one of the plaintiffs admits that he framed Cocoaine as a word, and that it was suggested by the cocoanut oil employed in the manufacture of the article, while the discoverer of the word Cocoine claims that it is a word, framed according to the genius of the French language, to express the extract of that oil.
The learned Judge who refused a new trial in this case upon the newly discovered evidence, was undoubtedly correct in considering such evidence as merely cumulative, if the fact that Cocoine was a word known and in use before the adoption of the word Cocoaine by the plaintiffs, was a subject of conflicting evidence before the Court at Special Term, and material, on the original trial of the issues in this action. But, in reality, there was no conflicting evidence, and either the testimony on the first trial failed to make out the prior or proper use of Cocoine, as indicating something connected with cocoanut oil, or the learned Judge on such trial must have held that such use and connection was immaterial, and that no one had a right to use any word as a device for his commodities which resembled a combination of letters which formed no word, adopted by another, if he did it with intent to have them mistaken for each other; and that there was evidence of such intent in this case. That learned Judge, who does not agree with *209 the plaintiffs in the view that Oocoaine is a word, but holds it to be merely a combination of letters, has not, either in his findings of fact or opinion, passed upon the question whether, upon the evidence, Cocoine was a word in the French language, but places his decision purely upon the ground that, after the plaintiffs had adopted Cocoaine, which was no word, the defendants could not employ the word Coeoine, even if it was a word, because it so nearly resembled the former as to be mistaken for it; and although we have a right to supply, as a fact found, that Cocoine was not a known word when the plaintiffs adopted Cocomne, if necessary to sustain the judgment, and the testimony warrants it, I think in this case the testimony of Simon, which was uncontradicted, does not warrant it. A word composed of the letters O-o-c-o-i-n-e was found in a scientific French dictionary, but with an accent over the final “e,” which renders the pronunciation different from what it would be without it. That word was, however, an adjective, and meant that which had the form of a cocoanut tree. In that form it was a botanical word. But the French language, as appeared, admits also of the formation of words to express a chemical result, and the termination “ine,” added to the name of a substance, expresses the "finest part or essence of it when reached by a chemical experiment and discovery, and there were two hundred words, with such termination, meaning extracts. The witness testified that by such rule Cocoine is a proper term in chemistry, and would mean the finest part of the cocoanut oil. Such testimony seems satisfactory to show that the term Cocoine could be very well adopted to signify an ex-tfactof cocoanut oil, find would be recognized as a French word expressing it by all who understood the French language and the rules of forming words in it. The question, therefore, comes back to the same point—whether the plaintiffs, by adopting the letters O-o-c-o-a-i-n-e in the order in which they did, precluded all the world from using the word Cocoine to designate an extract of cocoanut oil, if *210 the intent were thereby to sell the commodity to which it was attached as the plaintiffs’, and such were the result.
It is plain that the plaintiffs could not prevent the honest application by the public of the term Oocoine to an extract of cocoanut oil, or anything of which it was the principal ingredient, or the sale of such commodity by that name. The question therefore arises whether the defendants could anticipate the innocent application of such name to such commodity by the public, and employ it with intent to divert the plaintiffs’ custom. After such name became honestly public property, and publicly known, the plaintiffs would certainly no longer rely upon a word so near it as Oocoaine to protect themselves against the danger of confusion of the two articles; but until some honest motive made the. application proper, they had a right to rely on protection against the dishonest adoption of the term merely to injure them.
I am, however, by no means satisfied that the evidence in this case warranted the finding, that the defendants adopted the term Oocoine with intent to have the public believe that it was the same article as the plaintiffs’. The cause of reasoning by which the learned Judge, before whom the issues were tried, arrived at that conclusion, was simply this :• that the plaintiffs had advertised extensively their adoption of the term Oocoaine; that the defendant must have known such advertisements, because he did not deny knowledge of them on his examination as a witness; and that, knowing them, his adoption of a word so nearly alike must be held to be in bad faith. The chemist employed by the defendants swears that, being employed by the latter, he invented the name spontaneously; that he consulted many authorities before he did. so, and had not heard of Oocoaine as the plaintiffs’’ trade-mark, and his testimony is uncontradicted. It»,was- the- business of the plaintiffs to make out bad faith affirmatively. Nothing can be inferred from a party, when on the stand as a witness, not volunteering, to deny knowledge of a notice. It was the duty of the plaintiffs to-have brought such know- • *211 ledge home to him in some way. I do not think that the testimony bears out the inference of the learned Judge, that the plaintiffs had for nearly two years advertised their mixture in nearly every paper in Hew York. One of them testified merely that he advertised in some of the principal or leading papers; this being the only advertising, it was not prima facie evidence that the defendants had seen such notices, as it can hardly be presumed that every man reads all the newspapers. Without this presumption of knowledge by the defendants of the advertisements, there is no evidence to sustain bad faith on their part, and the evidence of one witness tends to show good faith.
For this reason alone I think there ought to be a new trial, as the question of good faith is vital to the plaintiffs’ right to interfere, particularly in a case of this kind where the word used by the defendants was appropriate to the article sold, was formed by a French chemist according to the analogies of the French language, and without knowledge of the plaintiffs’ trade-mark.
There appears, besides, to be an addition to the use of the word Coeoine in the defendants’ labels, besides the diaeresis over the “ i,” which should protect them either altogether or else in some degree from the charge of bad faith; the labels exhibited, and it is so charged in the complaint, have the name of the defendants’ firm prefixed to that title, thus showing the origin of the article sold, and this, in several cases, cited in Corwin v. Daly, (ubi supra,) has been held sufficient, unless some device is used to prevent its being noticed by the public. The value of such an addition in notifying the public as to the real manufacturer of the article sold, can be better determined on a new trial, by inspection. Ho notice seems to have been taken of it on the former one.
The judgment should therefore be reversed, and a new trial had, with costs, to abide the event.
Judgment affirmed.