## NEW YORK COMMON PLEAS.

### CORNELIUS M. MERSEROLE and JAMES L. LIBBY agt. MORRIS A. TYNBERG.

Whenever a *trade mark* is *first employed* to designate a particular manufacture, whether the term used is a popular one, formed of words or symbols common to the world, or one expressly created for the purpose to which it is applied, and the manufacture acquires reputation and becomes valuable as an article of merchandise, it will be protected from infringement by injunction.

Therefore, where it appeared that the plaintiffs were the first to use the word "*Bismarck*," although a popular term and one in general use, as a designation of a par-

Merserole agt. Tynberg.

ticular style of *paper collars* made by them, and have acquired by its manufacture and sale under that name a valuable interest in such designation, the defendant must be estopped from using it for the same purpose.

*Special Term, October,* 1868.

MOTION by defendant to dissolve injunction.

CLARENCE A. SEWARD, *for plaintiffs.*

SPRING & WETMORE, *for defendant.*

BRADY, J. ·Upon the conclusion of the arguments on the motion which was made to dissolve the injunction granted herein, I was impressed with the belief that the application must be denied, and subsequent examination of the proofs, papers and authorities confirmed that view. The subject of trade marks is exhausted by the briefs of the respective counsel, and an array made of American and English cases which shows their zeal and industry.

Due consideration of the whole case results, however, in this proposition: If the plaintiffs can be pronounced the first to use the word "Bismarck," although a popular term and one in general use, as a designation of a particular style of paper collars made by them, and to have acquired by its manufacture and sale under that name a valuable interest in such designation, the defendant must be estopped from using it for the same purpose. The plaintiffs had the right to appropriate such name, in common with others, for a new purpose, and, having done so, are entitled to avail themselves of all the advantages of their superior diligence and industry. There is no reason for making any distinction between a common word or term used for an original or new purpose which has accomplished its object, and a new design adopted by a manufacturer. Both give currency to the articles to which they are applied and distinguish them from other manufactures of a similar character. All persons stand alike on this theory, and all are entitled to protection. This rule is logically and justly evoked from the decisions relating to trade marks, although,

as I have had occasion to observe in another case, it may be said that there is a seeming, although not real, absence of uniformity in the doctrines established by them. I do not deem it necessary to analyze them. It is more practical and quite sufficient to state what, in my judgment, is appicable to this case, as one of the results of these determinations, and it is this:

Whenever a trade mark is employed to designate a particular manufacture, whether the term used is a popular one formed of words or symbols common to the world, or one expressly created for the purpose to which it is applied, and the manufacture acquires reputation and becomes valuable as an article of merchandise, an imitator thereof, for a kindred or similar manufacture, is presumed to intend wrongfully, and the burden rests upon him to show that there is either no property in the term or symbol, arising from priority of use, for the article to which it has been applied, or that no deceit or injury can result from the imitation. (*Piddings* agt. *Howe*, 8 *Simons*, 479; *Knott* agt. *Morgan*, 2 *Kern.* 213; *Barrows* agt. *Knight*, 6 *R. I. Rep.* 434; *Marsh* agt. *Billings*, 7 *Cush. R.* 323; *Broham* agt. *Bustard*, 9 *Law Times, N. S.* 199; *Harper* agt. *Pearson*, 3 *Law Times, N. S.* 547; *Hall* agt. *Burrows*, 9 *Law Times, N. S.* 561; *Smith* agt. *Woodruff*, 48 *Barb. S. C. R.* 439; *Howard* agt. *Henriques*, 3 *Sand. S. C. R.* 725; *Stone* agt. *Carlan*, 13 *Law R.* 360; *Matsell* agt. *Flanagan*, 2 *Abb. Pr. R. N. S.* 459; *Coffce* agt. *Bremton*, 4 *McLean*, 516; *Edelstein* agt. *Edelstein*, 1 *DeG. J. & Smith's R.* 185; *Walton* agt. *Crowley*, 3 *Blatch. C. C. R.* 447; *Davis* agt. *Kendall*, 2 *R. J. Rep.* 570; *Newman* agt. *Alvord*, 49 *Barb. S. C. R.* 538..)

The cases have become numerous because success provokes rivalry, and fair dealing does not always characterize competition. I have been unable to yield to the conviction which some persons seem to entertain, that it is fair dealing designedly to appropriate for the same object a word, symbol or term first employed by another for a particular pur-

pose, although such word, symbol or term is one in general use, and belongs in common to the world. The word, symbol, or term, abstractly considered, is not the subject of special right or property, but it may become so when the application of it identifies a particular manufacture, and the thing made, and the word, term or symbol, as applied to it, are synonymous.

"Property in a word for all purposes cannot exist, but property in a word, as applied by way of stamp upon a stick of liquorice, does exist the moment the liquorice gets into the market so stamped. Reputation in the market, whereby the stamp gets currency, and an indication of superior quality, or of some other circumstance, which would render the article so stamped acceptable to the public, is property." (*Per Lord* WESTBURY, *in McAndrews* agt. *Bassett*, 10 *Jurist N. S.* 550.)

There is a class of cases, such as *Corwin* agt. *Daly* (7 *Bosw.* 222), where the plaintiff endeavored to appropriate the name of "Club House Gin," and *Binninger* agt. *Wattles* (28 *How. Pr. R.* 206), where the designation employed by the plaintiff was "Old London Dock Gin," which would seem to conflict with the rule stated; but such is not the fact. The distinction between these and cases kindred to them is pointed out by Judge DANIELS, in commenting upon them, as he did in *Newman* agt. *Alvord* (*supra*). After showing that the protection sought in those cases was denied upon the ground that the terms adopted were previously in popular use for the same purpose as that to which the plaintiffs claimed the right specifically to appropriate them, he said: "But neither these decisions, nor any others to which they refer, sanction the conclusion that because a term is in popular use it can be burdened with no new use of a special and exclusive character, for the purpose of identifying the trade and manufacture of a particular individual. It is to be observed, also, that the rule which originally prescribed that fraud was a necessary element in the plaintiff's

Merserole agt. Tynberg.

case to be affirmatively established by him has ceased to exist. (*Cases supra.*) And all the essential requisites to the plaintiff's right to protection flow from the prior use of a term, symbol or word which has created for his manufacture a celebrity or value; and the burden of showing that the claim of priority is unfounded, or the absence of any injury resulting from its imitation, rests upon the defendant. This case demands a decision upon the precise proposition considered, inasmuch as the word Bismarck was applied to men and to things of various kinds prior to the use of it by the plaintiffs to distinguish their manufacture of paper collars, and was a popular term. The plaintiffs, however, were, in my judgment, the first to employ it as they did, and their collars, thus designated, acquired a valuable reputation in the market. It follows as a natural deduction that the imitation of the plaintiff's mark was predicated on the reputation which their paper collars of that name had acquired, and of which the defendant sought to avail himself. If competition, fair and honorable, as I understand it, had alone stimulated the defendant, he should have relied upon the quality or some attribute of his manufacture, and selected some distinctive appellation for it. It is the policy of the law to encourage enterprise, but not at the expense of superior diligence and industry. The market is closed against no one who, in a fair and honest spirit of rivalry, seeks to monopolize the entire trade in one or more articles of merchandise; but the elements of fraud, deceit or malappropriation of another's right can receive no countenance from courts of equitable jurisdiction.

It is unnecessary, however, to pursue this subject further, except to say that the defendant may not be subject to the charge of unfair dealing in fact. If he honestly believes himself entitled to use the mark introduced by the plaintiffs, from a conviction that they were not the originators of it for the purposes to which they applied it, the general observations herein contained about fair dealing may not

apply to him, although the legal results would be the same. I have considered this case in a general sense, without intending to reflect upon the defendant particularly.

The motion to dissolve the injunction must, for the reasons assigned, be denied, with ten dollars costs.