## NEW YORK SUPERIOR COURT.

ALEXIS GODILLOT agt. EDWARD C. HAZARD and another.

*Protection of a trade mark.*

There is no such property in the secret of manufacture that the article can be protécted by the use of a trade mark. The property and right to protection is in the device or symbol which is invented and adopted to designate the goods to be sold, and not in the article which is manufactured and sold.

Nor is the right to protection exclusively in the manufacturer. The person for whom the goods are manufactured, and the vendor who sells, and who may have no direct relation to the manufacturer, has such right.

Where the goods were manufactured exclusively for the plaintiff, he, as the vendor, had a right to establish a reputation for the quality of the article he sold, and perpetuate it by a device or trade mark which would denote its origin and ownership, and should thereby be protected in its exclusive use.

A trade mark may consist of anything — marks, forms, symbols — which designate the true origin or ownership of the article. It cannot consist of anything which merely denotes the name or quality. There can be no right to the use of mere generic words.

*Special Term, April,* 1875.

THE action was to enjoin the use of a trade mark.

The complaint alleged that the plaintiff for more than three years had been engaged in putting up packages of about one pound each, and importing an article known as "Julienne," composed of various vegetables for making julienne soup, upon which package he had placed a label or trade mark devised by him, a copy of which is annexed to the complaint.

The device consists of the words "conserves alimentaires," under which is the coat of arms of the city of Paris. Upon either side the monogram A. C. in a circle, and underneath

the words "Paris" and "Julienne," with directions for preparing for use and using.

The device adopted by the defendants is, in all respects, like the plaintiff's device, except the monogram is "F. G." In size, type, color and appearance, the two devices are entirely alike.

The answer alleged that "Julienne" was a generic name, and the mixture of vegetable used in making julienne soup was prepared and imported into the United States long prior to its being put up and imported by the plaintiff, and was previously well known to the general public by the name of "Julienne."

Upon the pleadings and affidavits a motion was made and granted to dissolve the preliminary injunction, but no appeal was taken.

On the trial the plaintiff testified that the article was put up for him in Paris, and that it had not before been prepared or put up in the same manner. There was evidence on the part of the defendants that the article known as "Julienne" was prepared and put up by several other manufacturers in France, and was imported into this country.

One of the defendants testified that the defendants caused the label they used to be printed in Paris, by their agent, having previously seen the plaintiff's label on packages of the "Julienne" they had purchased from him.

The court found the fact that the plaintiff first adopted and used the label claimed as his trade mark; that the defendants' label was calculated to deceive the customers of the plaintiff to his damage.

*Nelson Smith*, for plaintiff.

*Hugh Porter*, for defendants.

MONELL, *Ch. J.* — The case made by the evidence upon the trial of the action so far varies it from the case presented upon the motion to vacate the injunction that I am not embarrassed by the decision then made.

It now appears that the article sold by the plaintiff was prepared and put up for him in Paris by the firm of Hollier & Co.; and, although there is evidence that a similar article, designated "Julienne," is prepared and put up at other establishments in France, yet it is clearly established that the "Julienne" imported and sold by the plaintiff is prepared and put up expressly for him.

It is not, therefore, in my opinion, material whether other manufacturers prepare the same article, in the same manner, and of the same materials, or that it is imported into the United States and sold by other persons.

There is no such property in the secret of manufacture, that it can be protected. Any one, may prepare "Julienne" of the same ingredients that enters into the composition of the plaintiff's article; and he may designate it "Julienne," and sell it as such. The property and right to protection is in the device or symbol which is invented and adopted to designate the goods to be sold, and not in the article which is manufactured and sold.

The right to protection is not exclusively in the manufacturer. The person for whom the goods are manufactured (*Amoskeag Manufacturing Co.* agt. *Spear,* 2 *Sandf.,* 599; *Walton* agt. *Crawley,* 3 *Blatch.,* 440), and the vendor who sells, and who may have no direct relation to the manufacturer, has such right (*Partridge* agt. *Menck,* 2 *Barb. Ch. R.,* 103; *Taylor* agt. *Carpenter,* 2 *Sandf. Ch.,* 614).

Even, therefore, assuming that the article imported by the plaintiff is an article of common manufacture in France, and is imported generally into this country, and sold here under the name of "Julienne," that does not deprive the plaintiff of his property in the device which he has invented as a trade mark, and which he has put upon the packages for the purpose of designating the article he sells.

In *Amoskeag Manufacturing Co.* agt. *Spear* (*supra*), the learned justice DUER says (*p.* 605): "Every manufacturer, and every merchant for whom goods are manufactured, has

an unquestionable right to distinguish the goods he manufactures or sells by a peculiar mark or device, in order that they may be known as his in the market." And in *Partridge* agt. *Menck* (*supra*), the chancellor says (*p.* 103): "The question is not whether the complainant was the original inventor or proprietor of the article made by him, and upon which he now puts his trade mark, nor whether the article made and sold by the defendant is of the same quality or value." And BEARDSLEY, J., says, in *Taylor* agt. *Carpenter* (*supra*): "It is immaterial that the complainants were not admitted to be the manufacturers of the article. It was conceded that they were the vendors and engaged in the sale of it." In *Lee* agt. *Haley* (39 *Law Jour.*, 284), the plaintiffs were dealers in coal, a natural product in the general reach of all dealers, yet the court protected the good will of a business represented by a particular style of address.

It sufficiently appears from the evidence that the plaintiff is in a position to entitle him to adopt a trade mark to designate the goods in question. They were manufactured exclusively for him, and, within the authorities I have cited, he, as the vendor, had a right to establish a reputation for the quality of the article he sold, and perpetuate it by a device which would denote its origin and ownership.

If he had done so, he should be protected in its exclusive use.

A trade mark may consist of anything — marks, forms, symbols — which designate the true origin or ownership of the article. It cannot consist of anything which merely denotes the name or quality.

There can be no right to the use of mere generic words. Hence "Julienne" designating the manufactured article, does not denote origin or ownership, and like "Schnapps" (*Wolf* agt. *Goulard*, 18 *How. Pr. R.*, 64) and "Club House Gin" (*Corwin* agt. *Daly*, 7 *Bosw.*, 222), it is a word used merely to designate the article or its quality.

The words "*conserves alimentaire*," which are alike applicable to every description of preserved or desiccated food, do

not relate exclusively to the name or quality of any particular preparation, and are therefore the subject of an exclusive appropriation in connection with words which do not denote the name or quality; and in that sense they may be regarded as designating the true origin or ownership of the manufacture.

The adoption of words in common use as a trade mark was sanctioned in Matsell agt. Flanagan (2 Abb. [N. S.], 459), when the United States Police Gazette was held to be an infringement of the plaintiff's right to the use of the National Police Gazette. And in Messerole agt. Tynberg (4 id., 410) the word "Bismark" as a trade mark for a particular description of paper collars, was protected. And in Newman agt. Alvord (49 Barb., 588), a stronger case, "Akron Cement," which was the name of the place where the cement was made, was brought within the class of words entitled to be appropriated as a trade mark. These several cases are approved in Rillet agt. Carlier (11 Abb. [N. S.], 186), where the manufacture, a syrup from the juice of the pomegranate, was called "Grenade Syrup." In that case it appeared that "Grenade" was a French word signifying pomegranate, and that "Grenade Syrup" was sold in France under that name. It was, however, held that the plaintiff, by the adoption of the words, had acquired a property in their use, which the courts would protect.

Again, the copy of the coat of arms of the city of Paris, when in connection or combination with the other marks, words or devices, not denoting name or quality, will cover a property in it, which will prevent its use in the same connection or combination by another person.

In this case, however, none of the words or devices are isolated or disconnected with each other. They form in combination, a whole, supplemented by the plaintiff's monogram, and together, as is claimed, constitute his trade mark.

It is not necessary in this case to designate any particular words or symbols as constituting the plaintiff's trade mark; although I am of the opinion that the words "conserves ali-

*mentaire*," or the coat of arms of the city of Paris as a symbol, could, if it was necessary, be separately regarded as such, but the combination of all the words and symbols, which the plaintiff has put upon his label, entitles him to be protected against the appropriation and use of such combination by the defendants.

It has now come to be well settled, that the adoption of any words or device not already in use, and not denoting the name or quality of the article, will constitute a trade mark; and they so far become property, that the courts will protect the owner against any usurpation or interference; and for the well grounded reason that a person, who by his skill and industry has acquired a good reputation for the commodity he manufactures or sells, ought to be allowed to reap the fruits of it. This is forcibly illustrated in *Williams* agt. *Johnson* (2 *Bosw.*, 1), where the trade mark was "Genuine Yankee Soap," words of common use, but as they did not denote the name or quality of the manufacture, the plaintiff's property in them was fully sustained.

Independently of this, the label, as a whole, is entitled to protection. The courts have gone to the extent of bringing within its protection, not the trade mark alone, but the packages, cases and hand-bills (*Williams* agt. *Spence*, 25 *How. Pr. R.*, 366). In *Cook* agt. *Starkweather* (13 *Abb.* [*N. S.*], 392) the court held that the package, case or vessel in which the commodity is put, if prepared in a peculiar or novel manner, constituted it so much a part of the trade mark as to entitle it to participate in the protection which would be given to the trade mark itself.

Upon the whole case, therefore, I am satisfied that the plaintiff has such property in the label he has adopted to designate the goods he offers for sale that he should be protected in its exclusive use. He has, through his skill and industry, gained a reputation in the community for the excellence of the article he imports, and he ought to be permitted to reap the profits of it.

I am led to my conclusion in this case the more readily for the reason that I can find no excuse or justification for the defendants' acts. One of them testified that they had frequently purchased packages of the plaintiff's Julienne, and had sent to Paris direction to have their label prepared. It was prepared in all respects like the plaintiff's, except the insignificant change in the monogram.

That it was a willful invasion of the plaintiff's rights there can be no possible doubt. The defendants were at liberty to manufacture "Julienne," or have it manufactured for them, of the same materials and in the same manner, and to import and sell it in this market under the same name, and the plaintiff would have had no legal cause of complaint. With that undisputed right they were not content, but they meant to also trade upon the plaintiff's reputation and profit by it.

In *Lee* agt. *Haley* (*ubi sup.*) lord justice GIFFORD says: "The principle upon which the cases go is not that there is property in the word, but that it is a fraud upon a person who has established a trade and carries it on under a given name that some other person should assume the same name." And the chancellor, in *Partridge* agt. *Menck* (*ubi sup.*) also says: "That having appropriated to himself a particular label or sign or trade mark, indicating to those who wish to give him their patronage that the article is manufactured or sold by him, or by his authority, or that he carries on his business at a particular place, he is entitled to protection against any person who attempts to pirate upon the good will of the complainant's friends or customers, or of the patrons of the trade or business by sailing under his flag without his authority or consent." And again, in *Rillet* agt. *Carlier* (*ubi sup.*), Mr. justice PRATT says: "The defendants can have no possible motive in using these words (Grenade Syrup) except to avail themselves of the reputation the plaintiff's article has gained under this name."

The plaintiff must have judgment, perpetually enjoining the defendants from using his trade mark, with costs.