THE ROYAL BAKING POWDER COMPANY, Respondent, *v.* GEORGE SHERRELL et al., Appellants.

Letters or figures which, by the custom of traders or the declaration of the manufacturers, are only used to denote quality or grade are incapable of exclusive appropriation as trade-marks.

Plaintiff manufactured three grades of flavoring extracts; to designate the best grade the firm, to whose business plaintiff succeeded, adopted the word "Royal," the use of which was continued by plaintiff. Prior to such use defendants' predecessors manufactured mustard, to designate which they used the words "Royal Standard." Defendants continued the manufacture, and the use of the words. They also began the manufacture of flavoring extracts which they designated as "Royal Standard" extracts. In an action to restrain such use of the word "Royal," *held*, that plaintiffs were not entitled to the exclusive use thereof as it denoted quality or grade; and that a refusal to dismiss the complaint was error.

*Braham* v. *Bustard* (1 H. & M. 447) and *Hier* v. *Abrahams* (82 N. Y. 519), distinguished.

(Argued June 22, 1883; decided October 2, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 28, 1881, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendants from using the word "Royal" in connection with flavoring extracts manufactured by them, plaintiff claiming the exclusive right to such use as a trade-mark.

The firm of Zeigler & Seal, in 1868, began the manufacture of flavoring extracts; they manufactured three grades or qualities. To designate these grades they used the words "English," "Royal" and "London." Up to 1873 the word "English" was used to indicate the best grade. In that year they changed and used "Royal" to indicate the best grade, "English" the second, and "London" the third, and thereafter they were so designated. Plaintiff bought out said firm and succeeded to their business, and has continued the manufacture, using the word "Royal," as its predecessors had done.

In 1865, Place & Turley, to whose business defendants succeeded, manufactured mustard, which they designated as "Royal Standard" mustard. Defendants continued such manufacture, and in 1873 they began the manufacture of flavoring extracts, which they designated as "Royal Standard" extracts. Further facts appear in the opinion.

*Charles M. Marsh* for appellants. The term "trade-mark" has been applied to a name, symbol or design put on to distinguish the origin or ownership of goods, and to the label or manner of packing them. (*Hier* v. *Abrahams*, 82 N. Y. 523; *Congress Spring Co.* v. *High Rock Congress Spring Co.*, 45 id. 291; *Morgan Sons Co.* v. *Schwachofer*, 5 Abb. N. C. 265; *Amoskeag Co.* v. *Spear*, 2 Sandf. 599; *Binninger* v. *Wattles*, 4 Abb. [N. S.] 206.) Only such words as are not in ordinary use in the English language, or are used to express origin or ownership, can be used as a trade-mark. (*Corwin* v. *Daly*, 7 Bosw. 233; *Caswell* v. *Davis*, 58 N. Y. 233; *Amoskeag Co.* v. *Spear*, 2 Sandf. 599; *Binninger* v. *Wattles*, 78 How. 206; *Taylor* v. *Gillies*, 59 N. Y. 334; *Wotherspoon* v. *Gray*, 36 Scott. L. Jour. 24.) The word "Royal" is an adjective, and as such qualifies or expresses the quality of the essence mentioned in the label, and cannot be used as a trade-mark. (Richardson, Worcester, Webster; *Corwin* v. *Daly*, 7 Bosw. 233.) The fact that defendants made the name "Royal Standard" on certain goods — *e. g.*, mustard, gave them a right to apply it to other goods embraced within the ordinary scope of their business. (*Amoskeag Co.* v. *Garner*, 4 Am. L. T. R. [N. S.] 176.) It matters not that the form of words or phrases adopted as a trade-mark also indicate the origin and maker of the article. The combination of words must express only the latter. (*Caswell* v. *Davis*, 58 N. Y. 233, 234.) The question being an important one, and there being some evidence upon it, the refusal of the court to find either way is an error of law for which the judgment must be reversed. (Code, § 993.)

*John M. Bowers* for respondent. A trade-mark can consist

of a word, and in such case the use of the same word on simi-
lar substances, in any shape, manner or form, or in connection
with any words, will be restrained. No imitation is necessary.
(*Hier* v. *Abrahams*, 82 N. Y. 519; *Am. Grocer* v. *Grocer
Pub. Co.*, 25 Hun, 398.) The word "Royal" can properly be
used as a trade-mark. (*Burton* v. *Stratton*, 12 Fed. Rep. 696;
*Ford* v. *Foster*, L. R., 7 Ch. App. 611; *Braham* v. *Bus-
tard*, 1 Hen. & M. 447; *Lee* v. *Haley*, L. R., 5 Ch. 155;
*Meserole* v. *Tynberg*, 36 How. 14; *Caswell* v. *Davis*, 58 N.
Y. 223, 234; *Van Beel* v. *Prescott*, 82 id. 630; *Taylor* v.
*Gibbs*, 59 id. 331; *Amoskeag Co.* v. *Spear*, 2 Sandf. 599;
*Corwin* v. *Daly*, 7 Bosw. 233; *Binninger* v. *Wattles*, 28 How.
206; *Meserole* v. *Tynberg*, 36 How. Pr. 14; *Newman* v.
*Alvord*, 49 Barb. 588.) The imitation having been admitted,
plaintiff necessarily becomes entitled to the relief granted
below. (*Williams* v. *Spence*, 25 How. Pr. 366; *Enoch Mor-
gan's Sons & Co.* v. *Schwachofer*, 5 Abb. N. C. 265.) To
sustain an action of this character it is sufficient, if the ordinary
mass of customers, paying that attention which such persons
usually do in purchasing, would be easily deceived by the label
used by the defendant. An exact imitation need not be
shown. (*Swift* v. *Dey*, 4 Robt. 611.) Plaintiff's right to
maintain an action for violation of its trade-mark does not
depend upon defendants' intention to violate it. It is enough
that an actual violation is shown. (*Dale* v. *Smithson*, 12
Abb. Pr. 237; *Dixon Crucible Co.* v. *Guggenheim*, Cox's Am.
Trade-Mark Cases, 559; 2 Brewst. [Penn.] 321; *Williams* v.
*Spence*, 25 How. Pr. 366; 2 Bosw. 1; *Coffeen* v. *Brumton*, 4
McLane, 516; *McLean* v. *Fleming*, 6 Otto, 245; *Filley* v.
*Fassett*, 44 Mo. 173; *Potter* v. *McPherson*, 28 N. Y. Sup.
Ct. 559; *Gorham* v. *White*, 14 Wall. 511; *Devlin* v. *Devlin*,
69 N. Y. 212.) This use of plaintiff's trade-mark, by placing
an addition or tail to it, is no justification for the defendants.
(*The B'klyn White Lead Co.*, 25 Barb. 416; *Howard* v. *Hen-
riques*, 3 Sandf. Sup. Ct. 725; *Newman* v. *Alvord*, 49 Barb.
588; *Williams* v. *Johnson*, 2 Bosw. 1; *Barrows* v. *Knight*,
6 R. I. 434; *Matsell* v. *Flanagan*, 2 Abb. Pr. [N. S.] 459;

*Congress Co.* v. *High Rock Congress Co.*, 10 id. 348 ; 9 L. T. R. [N. S.] 199 ; Am. Tr. Cases, 674.) No right can be absolute in a name as a name merely. It is only when that name is used, printed or stamped upon a particular article, and thus becomes identified with a particular style and quality of goods that it becomes a trade-mark. (*Powley* v. *Houghton*, Am. Trade-Mark Cases, 486 ; *McAndrew* v. *Bassett*, Cox's Am. Tr. Cas. 669.) Even if the word "Royal" had been used by some one before the plaintiff, who had not claimed it as a trade-mark, that would be no justification for the defendants' infringing against the plaintiff who had adopted it as a trade-mark. (*Patridge* v. *Menck*, 2 Sandf. Ch. 622 ; 2 Barb. Ch. 101 ; 1 How. App. Cas. 558.)

RAPALLO, J. Letters or figures which, by the custom of traders or the declaration of the manufacturers, are only used to denote quality, are incapable of exclusive appropriation, but are open to use by any one, like the adjectives of the language. (*Amoskeag Co.* v. *Trainer*, 101 U. S. 51 ; *Amoskeag Manuf. Co.* v. *Spear*, 2 Sandf. 599.) The right to use a word or name as a trade-mark, is the right which a person has to use a certain mark or name for articles which he has manufactured, so that he may prevent another person from using it, because the mark or name denotes that articles so marked or named were manufactured by a certain person, and no one can have the right to put the same name or mark upon his goods and thus represent them to have been manufactured by the person whose mark it is. (Per Sir W. PAGE WOOD, V. C., in *Collins Co.* v. *Cowen*, 3 Kay & Johnson, 428.) But there can be no exclusive right to the use of words or marks which have no relation to the origin or ownership of the goods, and are only meant to indicate their quality or grade.

In *Corwin* v. *Daly* (7 Bosw. 233), the words "Royal," "Imperial" and "Princely" are referred to as words denoting the quality of an article — as indicating its high degree of excellence, such as "superior," "superfine," "extra," and similar words, and the word "Royal" is to be found of frequent use for that

purpose, in many cases in the books.    It was used by the defendants and their predecessors as applied to mustard which they sold as " Royal Standard " mustard, before its adoption by the plaintiffs.    In *Braham* v. *Bustard* (1 Hem. & Mil. 447) the word "Excelsior," in the name "Excelsior White Soft Soap," was sustained as a trade-mark.    It was objected that this was merely a mark of quality, but Sir W. PAGE WOOD overruled this objection and held that it was used to denote origin, because the plaintiff did not sell two or three qualities of soap, calling one of them Excelsior, but only one which they denoted the Excelsior White Soft Soap, and that it was like the words " Albert," " Victoria," " Eureka," etc., an arbitrary designation for the sake of distinction.    In the present case, however, it appeared upon the plaintiff's own showing, in the testimony of Mr. Zeigler, that when their predecessors, Zeigler & Seal, commenced putting up flavoring extracts, they did not use the word "Royal," but various brands, some being called " Concentrated Extracts," and some " Zeigler & Seal's Extract; " that afterward they put up some under the name of " Royal," and that they used that word as a distinguishing mark, and that a reputation was established for it as the finest quality the market afforded — one of the favorite qualities.    On cross-examination Mr. Zeigler being asked how he came to use the word " Royal," explained that at that time they were handling royal baking powder, and they took it to designate a certain grade of extracts ; that they had two or three other brands ; one was " London," one " English," and the third " Royal; " that the word " Royal " was applied to a specific article or quality, and the other terms to different qualities or grades ; that the " English " brand was the best up to 1873, and then they changed around and made the " Royal" their best grade, that the " London " had always been the poorest.    Mr. Wooden, the plaintiff's salesman, testified that the plaintiff did not designate the different grades of its extracts as first, second and third, but in a different way ; that one was called " London," another " English," and the other " Royal," and that the name designated the grade ; that the " Royal " was

the best, and that it only appeared in connection with the name of the plaintiff — The Royal Baking Powder Company — as the manufacturer.   Mr. Hoagland, the president of the plaintiff, testified that the name "Royal" was identified with its goods, as indicating a grade of goods of the highest quality.

We think this case comes within the principle of the case of *Amoskeag Mfg. Co.* v. *Trainer* (101 U. S. 51), *Amoskeag Mfg. Co.* v. *Spear* (2 Sandf. 599, 616, 618), and that it appeared that by the custom of the trade and the declaration of the manufacturers, the word "Royal" was used to denote the quality or grade of the goods.   It cannot be said, as in the case of *Excelsior White Soft Soap Co.* (1 Hem. & Mill. 447) that it was used simply as a word of distinction to indicate the origin of the goods, because the plaintiff did not sell two or three qualities, calling one of them "Excelsior."   The facts are just the reverse.

In the case of *Hier* v. *Abrahams* (82 N. Y. 519) relied upon by the plaintiffs, there was no claim that the word "Pride" was used to denote quality, nor was there any evidence that it was used to denote grade; but it was expressly found that it had been adopted by the plaintiffs as a trade-mark for cigars manufactured by them, and that this was known to the defendant, and that he imitated it and used it on cigars manufactured and sold by him, whereby the public were deceived into believing that they were purchasing cigars manufactured by the plaintiffs, and the plaintiffs were damaged thereby.   In the present case the evidence showed that the word "Royal" was used on one of their grades of extracts, for the purpose of designating one of the grades.   There was no element of fraud or imitation, for it appears that the defendants did not even know of the use of the word by the plaintiff until this action was brought. They used it, not as an imitation of any trade-mark of the plaintiff, but in connection with the word "Standard," to denote a superior quality, as they had previously used the words "Royal Standard" on mustard, and we are of opinion that this was no violation of any exclusive right of the plaintiff.

The motion to dismiss the complaint should, we think, have been granted.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except ANDREWS, J., absent.

Judgment reversed.