BEADLESTON & WOERZ v. COOKE BREWING CO.

(Circuit Court of Appeals, Seventh Circuit. May 4, 1896.)

No. 285.

1. TRADE-MARKS—DESIGNATION OF QUALITY—"IMPERIAL."
   The word "imperial" is so far a designation of quality as to be incapable of adoption as a trade-mark for beer. Showalter, Circuit Judge, dissenting.

2. SAME—MARKS OF ORIGIN.
   Plaintiffs, who were brewers, made for several years a kind of beer, to which they gave the name "Kulmbacher," and afterwards two other grades of beer, to one of which they gave the name "Imperial." All their packages bore their own name, the coat of arms of the state of New York, where plaintiffs' business was conducted, and the name "Empire Brewery," to which was added, in the case of each special kind of beer, its particular name. On the bottles of Imperial beer, designed for export, this name was placed on the label, with plaintiffs' name, and the coat of arms and name "Empire Brewery" were printed in the corner of the label, with the words "Trade-Mark." *Held,* that plaintiffs had not adopted the word "imperial" as a mark of origin or ownership, and were not entitled to protection in its use as a trade-mark.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The appellant, Beadleston & Woerz, a corporation existing under the laws of the state of New York, filed its bill in the court below for an injunction to restrain the appellee, the Cooke Brewing Company, a corporation of the state of Illinois, from the use of the word "imperial," claimed by the appellant as its trade-mark when applied to beer. Prior to the year 1889, the brewing business now conducted by the appellant in the state of New York had for many years been conducted by the firm of Beadleston & Woerz. The brewery was known as the "Empire Brewery." The appellant, the corporation, in that year succeeded to and has since conducted the business. Prior to June, 1885, Beadleston & Woerz brewed several grades of beer, the best quality of which was designated as "Kulmbacher." On the 30th of June, 1885, the firm purchased of the receiver of a defunct corporation, which had been engaged in the manufacture and sale of beer, the supposed title to the word "imperial" as a trade-mark when applied to beer, its use having been abandoned by such corporation. Thereafter Beadleston & Woerz and the appellant, as their successor, brewed and sold several qualities or grades of beer, the "Kulmbacher," the "Imperial," and a grade of beer of poorer quality. The firm and the corporation used as a trade-mark the coat of arms of the state of New York in connection with the name Beadleston & Woerz, the words "Empire Brewery" surmounting the coat of arms. There was also added the particular name of the beer to which the trade-mark was attached. In the case of beer sold in bulk, the name and general trade-mark were burned into the keg or barrel containing the beer, and a label pasted upon the keg or barrel, with the word "Imperial" printed thereon in red lettering, in case the keg or barrel contained beer of that grade. Afterwards they bottled their Imperial beer for the export trade, and placed upon the bottle a label bearing the name "Beadleston & Woerz, Imperial Beer, Brewed Especially for Export." In the lower left-hand corner of the label appeared the coat of arms of the state of New York, surmounted by the words "Empire Brewery," and underneath it the words "Bottling Department, New York." At the left-hand side of the coat of arms was the word "Trade," and on the right-hand side "Mark." Other devices came in use with substantially the same marks affixed, differing mainly in the color of the label. The appellee, the Cooke Brewing Company, is the proprietor of a brewery in the city of Chicago, established in the year 1887, and since the year 1892 has brewed and sold in bottles beer of three grades or qualities, the most expensive being called "Munich Hofbrau," next the "Imperial," differing in color and its manufacture from the other, less expensive to make, but said to be of equal quality, and a lower grade of beer called "Pilsener," and also an annual brew of "Bock" beer. The label used upon the bottles had printed thereon the words "Cooke's Imperial Beer," in red lettering, and "Chicago, U. S. A., Bottled at the Brewery's own Bottling Works" in black lettering, and its trade-mark consisting of a shield of stars and stripes, with the monogram "C" and a crowing cock printed thereon in red. The sales of the appellant, Beadleston & Woerz, are largely in the eastern and southern states and to the foreign trade, although to some slight extent they sell in the central and western states. The sales of the appellee are mainly confined to the central and western states.

L. C. Raegener, for appellant.

J. E. Deakin and Richard Prendergast, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

This case in no wise falls within the ruling in Pillsbury v. Pillsbury-Washburn Flour Mills Co., 24 U. S. App. 395, 12 C. C. A. 432, 64 Fed. 841. There is here, neither in design nor in fact, a palming off upon the public of the goods of one as those of another. The labels are wholly dissimilar, with the exception of the use of the word "imperial." The parties did not occupy the same market with

their wares.    The adoption by the appellee of the word "imperial" seems to have been in entire good faith and without knowledge of its prior adoption by the appellant.    The case is therefore one of a trade-mark, pure and simple.    The questions for consideration are, firstly, whether the word "imperial" was appropriated by the appellant and designed for use, in connection with the designation of its beer, as a mark of origin or ownership, or as indicative of the grade or quality of the beer; and, secondly, whether the term "imperial" is of itself a designation of quality.

First.    It was ruled in Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, that a trade-mark must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others; and that the device or symbol employed cannot be sustained as a valid trade-mark if it be used for the purpose of identifying the class, grade, style, or quality of the article.    In that case the word "Columbia" was employed to denote a particular grade of flour.    It was held that the word did not indicate original manufacture or ownership, and, under the proof, was shown to be used to designate the grade of the flour, and therefore could not be exclusively appropriated.    That case is in accord with the leading cases of Manufacturing Co. v. Spear, 2 Sandf. 599, and Manufacturing Co. v. Trainer, 101 U. S. 51, in which cases the letters "A. C. A.," although of themselves arbitrary, and conveying no meaning, were held to have been used to designate quality.    The court in the latter case observed, at page 55: "The device previously and subsequently used stated the name of the manufacturer, and no purpose could have been subserved by any further declaration of the fact."    So, in the case in hand, the device employed by the appellant and its predecessor as a trade-mark upon packages containing beer was the firm or corporate name and the coat of arms of the state of New York surrounded by the words "Empire Brewery Bottling Department."    The words "Trade Mark" are connected with the device.    The various names employed, "Kulmbacher," "Imperial," and others, merely designate different grades or qualities of beer, and were manifestly so designed to be used.    It is not deemed necessary to review the evidence.    It is strong to show that the word "imperial" was adopted long after the employment of other words used to characterize particular grades of beer, and to designate another grade or quality of beer not known by the name "Kulmbacher," or the other terms employed.    Being therefore so designed and used, the appellant is not entitled to be protected in the exclusive use of the word "imperial" as a lawful trade-mark.

It was said in Candee, Swan & Co. v. Deere & Co., 54 Ill. 439, 457:

"No man can have more than one mark or brand, and it is required to be recorded.    If the owner could have more than one trade-mark by which to distinguish his property, great confusion and uncertainty would be produced, to such an extent as to defeat the object in view."

Whether that statement be strictly accurate with respect to one dealing with two or more different articles of manufacture need not be here considered; but this is certain, that names, whether they,

of themselves, do or do not indicate grade or quality, cannot be employed to designate the grades or quality of goods, and be exclusively appropriated as valid trade-marks.

Second. The line of demarkation between words which of themselves do or do not import grade or quality is not at all times easy to be distinguished. This is owing to the growth and development of language. Words that originally had signification in relation to but one subject or matter come, in time, to be employed in a sense wholly foreign to their original signification. The word "epicure" is a notable instance of this. Derived from Epicurus, a Greek philosopher, who taught that peace of mind based on meditation is the origin of all good, the word, in its original sense, indicated a follower of or believer in the ethical system of that philosopher. Through popular misapprehension of his teachings, the word has come to mean, and is chiefly, and, perhaps, solely, used to designate, a devotee of sensual enjoyment; a voluptuary; a gourmand. Examples might be multiplied. It is thus with the adjective "imperial" here in question. Its primary signification was "Pertaining to supreme authority; royal; sovereign; supreme." It had like meaning with the adjectives "royal," "kingly," "princely," indicating, however, a more exalted authority. Like those terms, it has also come to be employed to designate that which is of imposing size, or of great excellence. Thus Pope, in his Moral Essays, observes:

> "Bid harbors open, public ways extend,
> These are imperial works, and worthy kings."

And in the last century—certainly before the year 1778—Townley employed the term as indicative of high quality of excellence. In "High Life below Stairs" he uses the expression—

> "From humble Port to imperial Tokay."

The Imperial, Encyclopædic, Standard, Century, and Webster's dictionaries also give one definition of the term to be "Of superior size or quality." One illustration given in the Standard Dictionary is "Imperial Tea," indicating a tea of superior excellence; tea fit for an emperor. So one speaks of a dinner as a "royal," "kingly," "princely," "lordly," or "imperial" feast, to indicate its great excellence of quality. The record contains evidence of general use of the word in the sense of superior quality. Thus we find the markets flooded with "Imperial Champagne," "Imperial Whisky," "Imperial Gin," "Imperial Cigars," "Imperial Ginger Ale," "Imperial Cider," "Imperial Claret," "Imperial Port," "Imperial Kimmel." That the adjective does, of itself, indicate quality, is not without support of judicial authority. Thus in Corwin v. Daly, 7 Bosw. 222, 233, the words "Club House," as applied to an article of gin, were held to indicate quality or grade; the court observing that the "term meant no more than 'royal,' 'imperial,' or 'princely' would do." And in the case of Powder Co. v. Sherrell, 93 N. Y. 331, the term "royal," applied to the article of baking powder, was held to be indicative of quality, not of origin or ownership. The case of Crawford v. Shuttock, 13 Grant (U. C.) 149, has not been overlooked. There an injunction pendente lite was granted by Vice Chancellor Spragge, re-

straining the use of the words "Imperial Soap." The learned jurist, however, expressed hesitation by reason of the frequent use of the word "imperial" as a term of designation in various branches of manufacture, but felt impelled to issue the restraining writ, through fear of serious injury to the plaintiff if his trade were interfered with. This case was decided in 1867, and seems not to have been carried further. It may be remarked that since that date a period of nearly 30 years has elapsed, and the adjective "imperial" has in that time been quite generally employed to indicate quality. We do not, therefore, feel bound to yield our judgment to a ruling that was delivered with hesitation, and has never been reviewed by a higher court. The word in question may be close to the border line between terms that signify quality and those that do not. It is safer, however, in the interest of freedom of trade, to protect the use of those terms, and those terms only, which clearly do not refer to grade or quality. The monopoly of use granted by the law of trade-marks should not be extended to embrace terms of doubtful signification.

Upon either and both of the grounds stated, the judgment appealed from was correct.

SHOWALTER, Circuit Judge. Upon the showing of this record complainant uses the word "imperial" to distinguish one grade of the beer made by it from another. Defendant uses the same word for the same purpose with respect to its product. We must, therefore, under the law applicable to such a state of facts, affirm the judgment. But, I do not concur in the proposition—if we are called on in this case to discuss it—that the word "imperial" is descriptive of beer. When used by a trader, this word does not touch or have any relation that can be called descriptive to any quality or attribute of an article like beer. I do not understand the record as showing that "imperial" has been, or that by any possibility it could have been, applied to whisky, gin, cigars, etc., in any sense descriptive of any one of said commodities. The use of a fancy word by a given manufacturer, to distinguish a particular grade of his goods from other grades made by him, is one thing; the use of the same word as a mark of origin by the manufacturer of a different article is another. A fancy word certainly does not become descriptive of cigars because a distiller uses it, not as a mark of origin, but to distinguish one grade from other grades of his own whisky. A fancy word, when used to distinguish grade, does not describe; it identifies. By fancy word I here mean not a newly coined word, but a word like "imperial," when applied to a commodity in trade, to distinguish either grade or origin. In Powder Co. *v.* Sherrell, 93 N. Y. 331, the word "royal" was used, not as a mark of origin, but to distinguish one grade of flavoring extracts from two other grades of the same product, all made by complainant. Defendant used the same word to designate one grade of flavoring extracts from other grades of the same goods as made by himself. On this ground went the ruling in that case. There was in that case no question touching the application of the word "royal" to the commodity, baking powder. By suggestion or metaphor the word "imperial," when applied to an article

of trade, carries the idea of comparative excellence or superiority, as does the word "excelsior," held by Sir W. Page Wood in Braham v. Bustard, 1 Hem. & M. 447, to be a valid trade-mark for soap; and as does the word "ideal," held in Waterman v. Shipman, 130 N. Y. 301, 29 N. E. 111, to be a valid trade-mark for pens. It has been repeatedly ruled (Keasbey v. Chemical Works, 142 N. Y. 467, 37 N. E. 476, for instance) that a word which suggests even the composition, quality, or characteristics of an article to which it is applied may yet be a good trade-mark. I am not willing to say that the word "imperial," when applied to a manufactured article to indicate origin, and when it does in fact indicate origin, and is so understood in the particular instance by the trading public, ought not to be held a valid trade-mark. As was declared, in substance, by the supreme court of the United States in Canal Co. v. Clark, 13 Wall. 311, 322, every trade-mark case is a case of unfair competition in trade. If there be no unfair or fraudulent competition, either extant or apprehended, there can be no recovery. The significance of a word alleged in a particular instance to be a trade-mark, as being by general usage descriptive or nondescriptive, is incidental or subordinate to the essential point,—namely, that defendant shall not, for the express purpose of trespassing on plaintiff's good-will, use, not descriptively, but as a mark of origin for his goods, a word which in fact already serves that very function in the case of plaintiff's goods. A trade-mark, as in effect said by the United States supreme court in the case last mentioned, is a notice, a medium of information touching origin or ownership. Whatever word does in fact serve that purpose is, to that extent, a trade-mark. The reason of the rule against a descriptive word is that it is incapable of the function. People will not understand it as a mark of origin. They will not be deceived by it into buying the goods of one manufacturer for those of another. Or, if any person be in fact misled, it will not be because of any representation by the competing manufacturer which can rightly be deemed false. A representation concerning a given product, which is none the less true when made by one dealer in that product than by another, cannot be actionable. The point is illustrated in Raggett v. Findlater, L. R. 17 Eq. 29, where the controversy arose over the word "nourishing" as applied to malt liquor. And in Bennett v. McKinley, 13 C. C. A. 25, 65 Fed. 505, the word "instantaneous," as applied to tapioca, to indicate that variety which was ground, and on that account could be most quickly prepared for the table, being as truthful and appropriate when used by defendants as by plaintiffs, the action failed. The word "imperial" by association or suggestion may call up, among other fancies, the notion of excellence or superiority, but it seems to me not descriptive in the sense of trade-mark law. I am not willing to declare that this word, habitually stamped by a manufacturer on his product, would not signify to the trading public, so far as his goods are concerned, the origin thereof, or that a subsequent similar use of the word by a competitor would not be a false representation. In Bennett v. McKinley, above cited, the court, speaking of the capability of a word to serve as a trade-mark, said: "If it is merely suggestive or is fig-

urative only, it may be a good trade-mark, notwithstanding it is also indirectly or remotely descriptive." In the case at bar the goodwill of complainant is not trespassed upon, since neither it nor the defendant uses the word "imperial" as a mark of origin. The decree is affirmed.