RAYMOND v. ROYAL BAKING-POWDER CO.[1]

(Circuit Court of Appeals, Seventh Circuit. January 12, 1898.)

No. 443.

1. TRADE-MARKS—MISLEADING LABELS.

No right is acquired by use in a label and trade-mark which speak an untruth whereby the public are misled, as where it states that the article is prepared in London by a firm named, who are purveyors to her majesty, whereas in truth it is prepared by an entirely different firm in New York.

2. SAME—INFRINGEMENT SUIT—EVIDENCE.

When one sued for infringement sets up a prior right by use to the trade-mark in question, it is incumbent on him to establish his prior use, at least satisfactorily; and, the defense is not made out by evidence which is conflicting and evasive, and rests largely on the unreliable memories of interested witnesses, who frequently contradict themselves.

3. SAME—ABANDONMENT.

One who, after using an alleged trade-mark for a short time, abandons it for nearly a quarter of a century, has no right to resume its use after it has been long employed by another, who has built up under it a large and successful business.

4. SAME—WHAT MAY BE USED AS TRADE-MARK.

The word "Royal" is capable of use as a trade-mark for baking powder, where it is applied to the whole manufacture of the party using it, and not to distinguish a particular grade of the goods. As thus used, it is not a descriptive term.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The Royal Baking-Powder Company, the appellee, filed its bill of complaint in the court below to restrain the use by George E. Raymond, the appellant, of the word "Royal" as the name or designation of a baking powder not manufactured by that company, and from the use of labels, circulars, and stamps which induce the belief that the baking powder sold by him was that manufactured by the Royal Baking-Powder Company. From a final decree imposing such restraints, this appeal is brought. In July, 1866, the firm of Biddle & Hoagland was formed, and commenced business at Ft. Wayne, in the state of Indiana, as druggists. Immediately thereafter they commenced the manufacture and sale of a baking powder which was termed "Royal Baking Powder," the term being used to

1 Rehearing denied March 5, 1898.

indicate the name of the powder, and not its quality. In 1868, Biddle disposed of his interest in the business to J. C. and C. N. Hoagland, who in that year removed to the city of New York, there assumed the firm name of "Royal Baking-Powder Company," and thereafter continued the business until the year 1873, when an incorporation was had under the statutes of the state of New York by the name of "Royal Baking-Powder Company"; and this corporation, the appellee, succeeded to, and has since continued, that business, manufacturing and selling a baking powder with the designation of "Royal" in large quantities, and without interference except as herein stated. This baking powder is put up and sold in cans on which are pasted labels containing the name and directions for use. These labels are in two sections; the one section containing directions for use printed on yellow ground in English and German text; the other and principal section is colored red, with the word "Royal" in white shaded letters above a circular design showing a can of the product, the word "Royal" being above, and the words "Baking Powder" below, the design of the can, ornamental scroll work being exhibited above and below the field of the design, as indicated in the principal section of the label herewith.

[In the representation of the labels, red is indicated thus ▦▦▦, and yellow thus ▤▤▤.]

The article so made and sold has, through extensive advertisement, become widely known as "Royal Baking Powder," and the sales of it are enormous.

The appellant, George E. Raymond, since about the 1st day of January, 1894, has, at the city of Chicago, manufactured and sold a baking powder put up in similar cans, with labels in two sections, the principal section having displayed upon it the words "Royal London Baking Powder," with the representation of the British coat of arms, the words being in red upon a yellow ground; the other section consisting of directions in English and in German, printed on yellow

ground, in the precise wording of the directions upon the label of the appellee. A copy of the principal section of the label is as follows:

[In the representation of the labels, red is indicated thus ▨▨▨, and yellow thus ▨▨▨.]

Upon the top of the cans containing the baking powder manufactured and sold by the Royal Baking-Powder Company, as also upon the top of the cans containing the baking powder made and sold by the appellant, are certain words embossed, which are of the style following:

 

It is claimed for the appellant that he had the better right to the use of the word "Royal," by reason of the following facts: In the year 1866, one Thomas Deering was engaged in the sale of spices, and conducted the business at 24–26 Peck Slip, in the city of New York. In that year he sold the business to Charles A. King, which business was by King and his partner conducted at first under the firm name of "C. A. King and Company," they giving the name of "American Mills" to the business. Josiah E. Decker afterwards purchased an interest in the business, and it was conducted under the firm name of Decker & King. The latter sold his interest to the former in the autumn of 1867, and Decker became the sole proprietor of the business, which he continued until August, 1868, when he sold nominally to Robert C. but in fact to George E. Raymond, the appellant; and the latter continued the business until the autumn of the year 1871, when he failed, and the business was abandoned. At some time during the conduct of this spice business (at what particular time is left uncertain by the testimony, but, as the court finds, not prior to August 16, 1867), there was commenced by the proprietors of that business the manufacture and sale of a baking powder which was denominated "Royal London Baking Powder." The baking powder manufactured by the appellant and by his predecessors in the business in New York constituted but a small part of the whole business, and the sales of it were confined to a narrow territory, and were inconsiderable in amount. The label adopted and placed upon the cans was in two sections, with brown lettering upon a gray ground. The principal section is here shown.

The other section contained directions for use, and bore the imprint "Geo. Barwood & Co., Printers, 402 Oxford Street." The date when this business in baking powder in the city of New York was first established is not shown to have antedated the use of the word "Royal" by the predecessors of the appellee at Ft. Wayne.

For further facts in the case, reference is had to the opinion of the court below, —Powder Co. v. Raymond, 70 Fed. 376.

Frank A. Helmer, for appellant.

Benjamin Harrison and Rowland Cox, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge (after stating the facts). We are content to affirm this decree upon the opinion rendered in the court below, deeming it essential only to make a few observations in addition to the views expressed by the circuit judge.

1. We are of opinion that neither the appellant nor any of his predecessors in the business in New York ever acquired lawful title to the use of the word "Royal" in connection with the manufacture and sale of baking powder. The purpose of a trade-mark is to identify the origin or ownership of the article to which it is attached. This is its primary object. Mill Co. v. Alcorn, 150 U. S. 463, 14 Sup. Ct. 151. Its purpose is to inform the public by what name the article is known, and where and by whom manufactured and offered for sale. The label adopted by the appellant and his predecessors in New York possessed none of these characteristics. It spoke a lie. It did not indicate that it was made by them, or either of them, or in the city of New York. It stated that the baking powder was prepared only by "Austin, Marshall, Hall & Co., Purveyors by Appointment to Her Majesty, 181 Tottenham Court Road, London, and New Cross, Surrey." The label falsely purported to be printed by "George Barwood & Co., Printers, 402 Oxford Street." It sought to convey the impression that the product was an imported article, manufactured in London. It was adapted and intended to deceive the public. Under such circumstances, no right arises which the law will countenance. Courts will not lend their aid to protect imposition and falsehood. Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436.

2. Assuming that property could be acquired in such a false trade-mark, we are nevertheless persuaded that its inception and use were not prior to the adoption of the trade-mark of the appellee and its predecessors. It is incumbent upon the appellant to establish such prior use, at least satisfactorily. The evidence produced upon the question of time is conflicting, evasive, and almost valueless, resting largely upon the unreliable memories of interested witnesses who contradict themselves at every turn. Thus, the witness Crump, who printed the false label, speaking solely from memory, states that he first printed the label in the fall of the year 1865; while in an affidavit made by him in June, 1872, for presentation in a suit in the city of New York, he states that it appeared by his day book that he delivered the first lot of labels August 16, 1867, and gives from his book the precise dates and number of labels furnished. This information from entries made at the time is more reliable than the uncertain memory. Upon a careful scrutiny of the testimony, we cannot doubt that the so-called "Royal London Baking Powder" was not placed upon the market until after the 16th day of August, 1867.

3. The appellant, after abandoning for nearly a quarter of a century the manufacture and sale in the city of New York of baking powder, and the use of the fraudulent label, recommenced business in the city of Chicago in the year 1894, using labels which were clearly adapted and intended to, and which clearly would, impose upon the public the article he made and sold as the article manufactured and sold by the appellee. This fraud was more bald and more injurious than that he had previously indulged, for here there was not only imposition upon

the public, but invasion of the right of the appellee to the business which it had established. The attempt to palm off these goods as the goods of the appellee is shown not only in the similarity of the labels, but in the character of the circulars issued, one of which at least is referred to in the opinion of the court below. The attempt at fraud is palpable and bald, and lacks even the redeeming merit of ingenious concealment. Within the decisions of this court in Meyer v. Medicine Co., 18 U. S. App. 372, 7 C. C. A. 558, and 58 Fed. 884, and Pillsbury v. Mills Co., 24 U. S. App. 395, 12 C. C. A. 432, and 64 Fed. 841, there can be no question of the duty of a court of equity to restrain the imposition and to protect the rights of the appellee.

4. The appellant claims that the word "Royal" of itself indicates quality, and cannot be adopted as a trade-mark or used as a trade-name; and, in support of this contention, reliance is placed upon the decision of this court in Beadleston v. Brewing Co., 46 U. S. App. 18, 20 C. C. A. 405, and 74 Fed. 229. That was a case of a trade-mark pure and simple, having no element of fraud or unfair trade. There the word "Imperial" was not in fact a part of the trade-mark, but was used to designate a particular grade or quality of beer. In obedience to the decision of the supreme court in Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, we held that this could not be done. That the words "Imperial" and "Royal" may import quality, and may be so used, we think, as we there said, must be true; but in the case before us the word is not so used, nor does it, in the connection in which it is used, indicate quality. It is applied to the entire manufacture of the appellant, and not to a particular grade, and has come to be known in connection with the article of baking powder as a word indicating the origin and the proprietorship of the manufacture. It would be inequitable in such case to say that a word which, under certain circumstances, may indicate quality when used for that purpose, may be employed in no other sense; nor do the authorities sustain any such contention, especially when the objection is urged by one who is manifestly seeking to impose his wares upon the public as the manufacture of another. One may not use his own name for such a purpose; still less can he use the word in question. The decisions upon this point are so numerous that it is deemed unnecessary to collate them. The case of Reddaway v. Banham [1896] App. Cas. 214, is instructive, and fully disposes of the contention here. The other questions discussed are sufficiently considered in the opinion delivered in the court below. The decree will be affirmed.