## STERLING PRODUCTS CORPORATION v. STERLING PRODUCTS, Inc.

District Court, S. D. New York.

Jan. 27, 1942.

Gustave Simons, of New York City, for plaintiff.

Wright, Gordon, Zachry, Parlin & Cahill, of New York City (Paul W. Williams and Fred J. Knauer, both of New York City, of counsel), for defendant.

BRIGHT, District Judge.

The plaintiff moves for an order temporarily enjoining the defendant from using the name "Sterling" or the words "Sterling Products", or a substantially similar name in its business, and directing the elimination and removal of such words from its signs, advertisements or documents. The amended complaint asks for a permanent injunction of the same kind and for $250,000 damages, based upon allegations that the plaintiff is a New York corporation, that defendant, a Delaware corporation, although doing business in the State of New York, has never obtained a certificate of authority so to do, that its adoption of a name practically identical with that of the plaintiff was for the purpose of deceiving and has deceived the public by confusing the defendant with the plaintiff, and because of such identity of name the fact that the defendant has lately consented to a decree declaring illegal a certain agreement between it and its subsidiaries and I. G. Farben, a German corporation, the plaintiff has been subjected to scorn, ridicule and attack throughout the United States and its business has been injured.

Whether or not the defendant is doing business in this state, which is de-

nied, is hardly a matter that should be determined at this time. It seems to me that only the state can take advantage of any failure on the part of the defendant to obtain such a certificate. General Film Co. of Missouri v. General Film Co. of Maine, 8 Cir., 237 F. 64, 66.

■ Plaintiff further claims that where it appears under Section 9 of the General Corporation Law of this state, Consol. Laws, c. 23, that a domestic corporation has in good faith incorporated under the laws of this state, the doing of business here by another will be unconditionally prohibited regardless of whether the name is generic or descriptive, without regard to priority of use of the name, and without any showing of actual competition or damages, citing Mutual Export & Import Corp. v. Mutual Export & Import Corp. of America, D.C., 241 F. 137. But the holding in that case is not as broad as the proposition for which it is cited. There was not there involved any question of priority of use, unfair competition, or use acquiesced in for many years. That case recognizes the fact that incorporation in New York is not alone sufficient on which to base injunctive relief. It seems to be well settled that in granting a franchise, the state merely sanctions the use of a name if it is otherwise lawful. It is not an adjudication of the legality of the name chosen, nor a decision as to whether it may be used. Indian Territory Oil & Gas Co. v. Indian Territory I. Oil Co., 95 F.2d 711, 713, certiorari denied 305 U.S. 607, 59 S.Ct. 67, 83 L.Ed. 386; Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C., 20 F.Supp. 703, 707; United States Light & Heating Co. of Maine v. United States Heating & Lighting Co. of New York, C.C., 181 F. 182.

■ The word "Sterling" adopted by both parties to the action is obviously descriptive and is not susceptible, in my opinion, of exclusive adoption by anyone. The same would seem to be so of the words "Sterling Products". Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 603, 9 S.Ct. 166, 32 L.Ed. 535. The question then is whether or not such word or words have acquired a secondary meaning, because of the use of either, to enable plaintiff to claim the exclusive right to use them. For such purpose it must appear that they have been used for many years in the business of the plaintiff in such a manner and so extensively as to warrant the conclusion that the name means the plaintiff and plaintiff's products only, and distinguishes the plaintiff's goods from others of the same class. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 334, 59 S.Ct. 191, 83 L.Ed. 195; American Products Co. v. American Products Co., D.C., 42 F.2d 488. The use of the name must be exclusive. Indian Territory Oil & Gas Co. v. Indian Territory I. Oil Co., supra. The words must carry an association in the mind of the buying public that they mean the plaintiff's product and no other. General Baking Co. v. Grocers' Baking Co., D.C., 3 F.Supp. 146, 149.

■ The facts shown upon this subject do not convince me that the use by plaintiff of the words "Sterling Products" have acquired such a secondary meaning. It is claimed that they have been so used by plaintiff and David B. Levy, the predecessor in business of the plaintiff, since 1907. It appears, however, that the use of the words really began in or about the year 1914, but only as an adjunct to the name of David B. Levy, that being the prominent and predominant part of the name used upon products sold by Levy, the words "Sterling Products" being printed in small letters in the flourish following the name David B. Levy in prominent type. The words "Sterling Products" were really the tail to the David B. Levy kite. That obviously was the way in which those words were used by Levy until about 1928, three years after the plaintiff corporation was organized by Levy, and to which, some time after its incorporation, he claims in the moving affidavit to have transferred the business and name. In the meantime, and until about 1928, Sterling Products was not the name used by plaintiff or Levy in the telephone directories, nor was the business conducted in that name to the exclusion of David B. Levy.

The defendant is a holding company which purchased all of the stockholdings of Sterling Products (Incorporated). Sterling Products, Incorporated, was a West Virginia corporation, organized prior to 1917 under the name of Neuralgyline Company, and the name of which was changed to Sterling Products (Incorporated) in 1917. That name has ever since been used on labels, packages and advertisements. Between 1917 and the beginning of this action, that company sold its products under that name throughout the United States and its advertising bill of these products

over that period in that wide area amounts to $20,000,000. They include such well-known articles as Syrup of Figs, Danderine, Bayer's Aspirin, Cascarets, Philip's Milk of Magnesia, Castoria and Diamond Dyes. The stock of that company was listed upon the New York Stock Exchange as early as 1922. In 1932 the defendant was incorporated under the same name in Delaware and acquired all of the stock and stockholdings of the West Virginia Corporation, and both corporations have since continued in business, the defendant as a holding company and the West Virginia Corporation as an operating company. Since the incorporation of the Delaware corporation, the defendant has acquired, advertised and sold under the name of Standard Products, such other well-known articles as Dr. Lyon's Tooth Powder, Ironized Yeast, Mollé Shaving Cream and Energine Cleaning Fluid. The stock of the Delaware corporation, since its incorporation, has been listed upon the New York Stock Exchange, and it has over 24,000 stockholders, and assets of over $50,000,000.

The defendant's wide markets, its extensive advertising, the variety of products sold by it and its subsidiaries, make one wonder whether the products of the defendant rather than the products of the plaintiff have become known as "Sterling Products", and to whom, if either, belongs the right of use because of the secondary meaning. The statement is made in the defendant's memorandum, and it seems to me with a great deal of force, that if prior to the incorporation of the plaintiff, David B. Levy had inserted an advertisement without his name and signed it "Sterling Products", no one would have known that it referred to his business.

From the showing made upon this motion, I cannot decide that plaintiff has acquired the exclusive right to use its name because of any secondary meaning attached to it.

The final question, although it is doubtful if it is adequately raised by the amended complaint or the motion papers, is whether defendant is to be charged with unfair competition. Much similar considerations are to be given to this contention as to the others. The use of an identical trade name is in practically the same category, so far as the law is concerned, as the claim of unfair competition. If the name used by both is descriptive, plaintiff would have no right to prevent defendant from using the same corporate name, or in so designating an article of sale, if the latter's so doing was not accompanied by any wrongful conduct having the effect of representing falsely the origin or source of its product, or in attempting to palm its product off on the purchasing public as the product of the plaintiff. This would be so where the words have a secondary meaning. Dry Ice Corp. v. Louisiana Dry Ice Corp., 5 Cir., 54 F.2d 882, 885, certiorari denied 286 U.S. 558, 52 S.Ct. 640, 76 L. Ed. 1291; Amoskeag Manufacturing Co. v. Spear & Ripley, 2 Sandf. 599, 606, 4 N.Y.Super.Ct. 599; Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 327, 20 L.Ed. 581; Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 602, 9 S.Ct. 166, 32 L.Ed. 535; McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828. The whole Law and the Prophets of unfair competition, Judge Learned Hand has said, is that one merchant shall not divert customers from another by representing what he sells as emanating from the second. Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972, 973. It is the trade and not the word that is to be protected. Here there is no proof that the defendant has foisted its wares off as that of the plaintiff, nor that the buying public has been confused and purchased defendant's goods for plaintiff's. The goods are obviously sold under such totally different names as to preclude any such substitution. The name has been used by plaintiff and the two corporations, one the defendant and the other owned by the defendant, for sixteen years or more, without any revealed dispute or question arising between them, or any effort on the part of either to complain of the other. The occasion of the present difficulty is obviously the fact that a short time before the beginning of this suit, the defendant was in trouble with the federal authorities for an alleged breach of the Anti-Trust Laws, in that it had agreed with the German Drug Trust in contravention of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and as a result of that difficulty, the defendant had permitted a consent decree against it. The publicity attending this court proceeding caused several of the customers of the plaintiff to refuse to do business with it because of their thought that it was affiliated with a

German ·interest. The trouble arose not because of unfair competition but because of unusual publicity.

The questions involved in the suit, therefore, should be left for a trial, and do not warrant the granting of plaintiff's motion, which is denied.