**ROYAL SILVER MFG. CO., Inc., v. NATIONAL SILVER CO. et al.**

District Court, S. D. New York.

May 9, 1945.

233

GODDARD, District Judge.

This is an action for the cancellation of a trade-mark registered in the United States Patent Office by defendant Samuel E. Bernstein in 1921 and allegedly used by the defendants successively and continuously since about 1914; for an injunction against the continued use of this registered mark; and for an accounting of profits and damages for past use.

The plaintiff, Royal Silver Manufacturing Company, Inc., is a corporation organized on May 14, 1909, under the laws of the State of Virginia and since its incorporation to date has manufactured table flatware and table cutlery. Upon organization of the plaintiff corporation it claims it started to use in 1909, among others, the two marks "Royal Brand" and "Royal Silver Mfg. Co." which it never registered, upon its goods. Among other trade-marks it has used the original marks in one form or another ever since, and in 1932 when the plaintiff went into the manufacture of stainless steel tableware, it dropped the word "Brand" from its trade-mark "Royal Brand" and used the word "Royal" combined with "Stainless Steel" so as to result in "Royal Stainless." Different patterns of this stainless ware were and are also sold under various combinations with the word "Royal," such as "Royal Streamline"; "Royal Virginia"; "Royal Norva"; "Royal Windsor".

The plaintiff also used two other trade-marks; one was "Rajah" registered in the United States Patent Office in 1910; the other "Crown" used since 1909. These trade-marks will be treated with more particularity later on in this opinion.

The plaintiff has marked its ware with the private brands of the customers upon request. The plaintiff's goods have been sold in many parts of this country. Plaintiff's main customers were mail-order houses and the plaintiff's ware appeared in catalogues of various mail order houses at least as early as 1916. However, the plaintiff also sold to retail concerns.

The plaintiff claims that by its first use of the words "Royal Brand" and "Royal Silver Mfg. Co." on cutlery it acquired a valid technical trade-mark in the word or words; it also claims that as a result of its sales and advertising it became well known to the trade and its trade-marks became well known to the trade and public as indicating goods made by the plaintiff. The plaintiff also asserts that its customers

Nims, Verdi & Martin, of New York City (Harry D. Nims, Minturn de S. Verdi, Wallace H. Martin, and Marion L. Severn, all of New York City, of counsel), for plaintiff.

John P. Chandler, of New York City (Edward S. Rogers and Clifton Cooper, both of New York City, of counsel) for defendants.

234

and the trade in general came to know plaintiff's ware as "Royal" or the "Royal Brand" and associated goods so marked as being goods manufactured by the plaintiff.

In 1890 Samuel E. Bernstein entered into the business of household furnishings and cutlery and continued with various partners until 1909, when he started in business for himself. On August 22, 1910, he filed a certificate in the New York County Clerk's office of doing business under name "Royal 5, 10, 19 Cent Store." On June 19, 1912, he filed a certificate of doing business under the name "Royal Brand Cutlery Co." Continuing in the same business until 1922, he then incorporated under the name of Samuel E. Bernstein, Inc., which on December 11, 1928, was merged with "Nasco Co." into the National Silver Company. Since 1894 a substantial part of the business carried on by Bernstein or his successor companies has been as a wholesaler and jobber in cutlery.

During the entire period up to 1932 defendants bought finished articles and also parts which they assembled in their own plant. In 1932 they acquired a manufacturing plant and began to forge their own knife blades.

Since 1909 until about 1941 the defendant or its predecessor has purchased from the plaintiff a vast number of pieces, both finished and parts. Many of them were marked with various combinations of the word "Royal"; some of which were marked at the express request of defendants.

In 1921 Samuel E. Bernstein, while doing business as Royal Brand Cutlery Company, registered a trade-mark consisting of a generally double squared edged diamond-shaped figure bearing the words "Royal Brand Cutlery Company" between the diamonds and the words "Sharp-Cutter" at the center of the internal diamond as represented in the following drawing:

In his application for its registration Samuel E. Bernstein stated that "The trade-mark has been continuously used in my business since June, 1914." He further stated—"that no other person, firm, corporation or association, to the best of his knowledge and belief, has the right to use said trade-mark, either in the identical form or in any such near resemblance thereto as might be calculated to deceive."

The basic question presented is whether the plaintiff has a valid technical trade-mark right to the word or words "Royal" or "Royal Brand" as a result of its prior adoption and use.

■ A mark which is descriptive is not a valid technical trade-mark. Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, at page 335, 59 S.Ct. 191, 201, 83 L.Ed. 195; William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161.

■ The court is inclined to follow the opinion of the Circuit Court of this circuit holding that the word "Royal" is merely descriptive and not capable of adoption as a technical trade-mark. See Hiram Walker & Sons v. Penn-Maryland Corporation, 2 Cir., 79 F.2d 836, and cases therein cited; Sterling Products Corporation v. Sterling Products, D.C., 43 F.Supp. 548; Royal Baking Powder Co. v. Sherrell, 93 N.Y. 331, 45 Am.Rep. 229; compare Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 68; Waterman v. Shipman, 130 N.Y. 301, 29 N.E. 111.

The plaintiff cites Royal Baking Powder Co. v. Royal, 6 Cir., 122 F. 377, and Raymond v. Royal Baking Powder Co., 7 Cir., 85 F. 231, for the proposition that the word "Royal" is a valid technical trade-mark. I do not think that either of these cases support plaintiff's contention. In Royal Baking Powder Co. v. Royal, supra, the court based its holding on the ground that whether or not "Royal" was capable of adoption as a valid technical trade-mark, the plaintiff proved that it had obtained a secondary significance.

In Raymond v. Royal Baking Powder Company, supra, the court specifically recognized Beadleston & Woerz v. Cooke Brewing Co., 7 Cir., 74 F. 229, which held the word "Imperial" was not adoptable as a valid technical trade-mark. The Beadleston case was relied on as authority in Hiram Walker & Sons v. Penn Maryland Corporation, 2 Cir., 79 F.2d 836. The Raymond v. Royal Baking Powder Co. case was distinguished from the Beadleston

case on the ground that since the word "Royal" was applied to the entire manufacture of the plaintiff and not to a particular grade and had come to be known in connection with that article of baking powder as a word indicating the origin, it was a valid technical trade-mark. This case apparently laid down two conditions before the word "Royal" could be said to be a valid technical trade-mark, namely —that the word be applied to the entire production of the plaintiff and that it indicated the origin of the product. The decision was based upon the principles set forth in Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144, which held, among other things, that the claimant, in order to establish valid trade-mark rights in a name, must have been the first to use or employ it on like articles of production. The court did not limit this to the first in point of time as between the litigants, but first in the specific trade to use that name on the article in that section where it is sold. See Hiram Walker & Sons v. Penn Maryland Corporation, 2 Cir., 79 F.2d 836, 839 and cases therein cited. In both Royal Baking Powder cases referred to above the court found that the Royal Baking Powder Company was the first to use the name "Royal" on baking powder.

In this present case the evidence clearly shows that this plaintiff was far from the first to use the word "Royal" in the cutlery and silver-ware trade. There were at least four trade-marks with the word "Royal" predominating, registered in the Patent Office before 1909, namely—"Royal Manufacturing Co.," Reg. No. 33284 of 1899; "Royal E. S. Co.," Reg. No. 10494 in 1883 covering shears and scissors; "Royal Worcester," Reg. No. 20976 of 1892 covering all kinds of cutlery; "Royal Silver," Reg. No. 19406 of 1891 covering solid, plate and other silverware. The word "Royal" was used as a part of corporate titles and as a descriptive word on numerous articles of silver prior to 1909. A few examples are—"Royal Baby Plate" 1906; "Royal" 1908; "Royal Oak," Gorham Co. 1902; "Royal Plate Co." 1901; "Our Royal" 1909 N. Shure; "Royal Windsor," Rogers & Hamilton 1891; Royal Silver Co.; The Royal Silver Company; Royal Metal Mfg. Co. There is abundant evidence that this plaintiff was not the first in its field to use the word "Royal" on cutlery or silverware; there-

fore, it seems evident that under the doctrine of Columbia Mill Co. v. Alcorn, supra, this plaintiff fails to establish a valid technical trade-mark.

█ The next question is whether the combining of the word "Royal" with the word "Brand" resulting in "Royal Brand" gives the plaintiff a valid technical trade-mark. In Columbia Mill Co. v. Alcorn, it was held that if the mark was placed upon the article for the purpose of identifying its class, grade, style or quality, it could not be sustained as a valid trade-mark. This principle was adhered to in both the Royal Baking Powder cases and it is the doctrine of New York. The Royal Baking Powder Co. v. Sherrell, 93 N.Y. 331, 45 Am.Rep. 229. The evidence in the case at bar shows that the plaintiff, when not marking its goods with the special marks requested by the respective customers, marked the goods principally with three different marks. On its "12 dwt" goods it used the marks "Royal Silver Mfg. Co." or "Royal Brand Warranted Hand Forged"; on its second grade goods, the "4 dwt or 6 dwt"—it used the registered trade-mark "Rajah" or "Rajah Mfg. Co."; on the cheapest grade of goods, its "2 dwt," the word or words "Crown" or "Crown Mfg. Co." appeared. The plaintiff has continued to use the above marks to distinguish its own marked goods insofar as quality is concerned. The evidence shows that the plaintiff as late as 1932 was using these three quality marks. The evidence is therefore that unlike the situation in Raymond v. Royal Baking Powder, supra, plaintiff's entire production was not marked with the word "Royal" or any combination of the word "Royal". Plaintiff generally used the words "Royal Brand Warranted Hand Forged" or "Royal Silver Mfg. Co." to indicate its best quality of cutlery as in Royal Baking Powder Co. v. Sherrell, supra.

The plaintiff has not, therefore, a valid technical trade-mark in the words "Royal Brand."

█ Since the plaintiff has not a technical trade-mark in the word or words "Royal" or "Royal Brand" it must prove the existence of a secondary meaning. Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Standard Paint Co. v. Trinidad Asphalt Co., 220 U.S. 446, 447, 31 S.Ct. 456, 55 L.Ed. 536; Sterling

Products Corporation v. Sterling Products, supra; Charles Broadway Rouss, Inc. v. Winchester Co., 2 Cir., 300 F. 706, at page 714, certiorari denied 266 U.S. 607, 145 S. Ct. 92, 69 L.Ed. 465. This secondary meaning must be shown to have existed at least prior to 1921, for the registration of the "Royal Brand Cutlery Company, Sharp-Cutter" diamond design in 1921 by the defendant raises a presumption of its validity. James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 128 F.2d 6, certiorari denied 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541; Hemmeter Cigar Co. v. Congress Cigar Co., supra.

■ To establish the existence of a secondary meaning in the particular trade and class, plaintiff must prove that these words were used by it in such a manner and so extensively that they were commonly associated with the plaintiff and its products. Sterling Products Corporation v. Sterling Products, D.C., 45 F.Supp. 960; Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S. Ct. 191, 83 L.Ed. 195; DuPont Cellophane Co. v. Waxed Products Co., 2 Cir., 85 F. 2d 75, 81, certiorari denied 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443; Du Pont De Nemours & Co. v. Waxed Products Co., 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539, rehearing denied 305 U.S. 672, 59 S.Ct. 227, 83 L.Ed. 436.

■ The plaintiff has offered little, if any, proof that the words "Royal," "Royal Brand," and "Royal Silver Mfg. Co." as used by it had acquired a secondary meaning and the record would not support such a finding.

■ Next, for consideration, is the plaintiff's charge that defendant was guilty of unfair competition. To sustain this charge the plaintiff must prove that the mark used by plaintiff had acquired a secondary meaning or significance and that the necessary and probable tendency of the defendant's conduct is to deceive the public and to pass its goods off as and for those of the plaintiff, although actual fraudulent intent need not be shown. McGraw-Hill Pub. Co. v. American Aviation Associates, 73 App.D.C. 131, 117 F.2d 293; Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L.Ed. 1008; Sterling Products Corporation v. Sterling Products, D.C., 45 F.Supp. 960.

■ Not only has the plaintiff failed to prove the existence of a secondary meaning, but there is no evidence that the goods of the defendants have been passed off as those of the plaintiff either intentionally or unintentionally. If there is any confusion, apparently it is not serious for there are only two instances in all the years where there has been any suggestion of it. However, the plaintiff and the defendants in adopting "Royal"—a descriptive word, then in fairly common use by others in more or less the same business—could hardly have failed to realize that situations might arise where some of the public might be confused.

The court should be and is reluctant to interfere in a situation which the parties themselves have permitted to develop. Conflicting interest must always be weighed. Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corporation et al., 2 Cir., 105 F.2d 908, 910. It seems to me that it would not be equitable at this late date to deprive the defendants of the use of its mark, in view of the following circumstances: That the defendants have been using the diamond trademark for about thirty years and registered it twenty-four years ago; that the mark appeared on its letter head for over twenty-four years; that it had appeared on the signs on the front of its factory and salesroom for many years; that the defendants had it put on goods manufactured for it by various concerns besides the plaintiff; that during these many years the defendants have, with extensive advertising, built up a large business in goods bearing the mark—all of which it is difficult to realize could have escaped the notice of the plaintiff; also the fact that plaintiff's own testimony is that the diamond design with the words "Royal Brand Cutlery Company" was first used by it in 1929.

In view of the above it is unnecessary to give consideration to Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, which holds that a registered trade-mark cannot be cancelled except in the manner prescribed by statute. 15 U.S.C.A. §§ 121 et seq. and 93.

The defendants may have a decree dismissing the bill of complaint. Defendants to promptly submit findings of fact and conclusions of law in accordance with the above on five days notice.